121-1280-WC F.E. Moran Fire Protection Co. appellant by Amy Bilton v. Illinois Workers' Compensation Comm'n Frank Meonee-Appley by Kevin Buebler. Ms. Bilton, you may proceed. Turn on your speaker. There we go. Thanks. It's only been two and a half years. You'd think I'd get that right now. Yes, it has been. Well, may it please the court, counsel, Amy Bilton on behalf of the appellant F.E. Moran. You don't know me well, but I will tell you something about myself. I love football, and I spend Thursday through Monday essentially watching football. Does that mean you didn't prepare for your argument? Last night was the only Monday I've missed in like three years. My husband thought there was wrong with me. But I love football so much. I've noticed, though, that there have been so many penalties. And if you watch the Niners-Bears game this last weekend, you'll see a team was destroyed by penalties, right? And so that's a good example. And one of the changes that football has gone through, obviously, in the years that we've been watching is that we now have the video replay. With the law, we've always had the replay, right? We've always had the ability to go back, read the transcript, weigh the evidence, determine whether the decisions made by the referees, by the commission in this case, were correct. And you hear the challenges. And in this case, you actually heard the challenge from the claimant in 2019 and addressed one issue. The other issues became moot. But the issue you addressed was whether certain testimony the arbitrator heard and the commission relied upon was admissible. You decided that evidence was not. And you instructed the commission to take the play back. And you remanded with directions. Today, you're hearing my challenge. And that challenge is that the commission did not follow your instructions and take the play back. They didn't repeat the down. Instead, they restarted the game clock from the very beginning, all the way back to the very beginning of the game, and reassessed all the evidence. Ms. Bilton, let me stop you there. Yes. I want to question you about that. So, it's your position that the commission on remand was going to reconsider the testimony of the claimant in a vacuum. My question is, doesn't a re-evaluation of the claimant's testimony necessarily require a on the other evidence? Yeah, if you take the scale, essentially, each person's testimony or each document gets its own weight, right? And let's think of it on the scales of justice. So, Dr. Drzezic gets this much. And Scott Akrud gets this much. And Smith gets this much. And the surveillance might get that little tiny little bit or none at all, right? That's up to the commission, though, isn't it? They assess the weight of the evidence, how much it gets. Yes. But, Your Honor, you send it back for them just to reassess the piece that existed for Mr. Mione, the claimant himself, not to look at the doctor again. Hold on. Let me read you from our opinion. In light of the following, we reverse the circuit court's judgment, vacate the commission's decision, and remand so that the commission may reconsider its decision while taking into account only appropriate evidence. On remand, the commission shall reconsider all issues as appropriate. However, it shall not take into account inadmissible. You said all issues, but not all evidence. What the what, what the case opinion itself said is that there were witnesses whose credibility was not in any way, in your words, quote, in any way impacted by this inadmissible evidence. And that included Akrud and Smith. And of course, that has to include the physicians as well. And this commission went back and looked at the physicians and their whether their opinions were persuasive. In 2016, they were impacted by the claimant's credibility. The commission clearly initially drew an adverse inference. Did they not to the claimant's credibility based on the bad acts that we decided should not have been considered? They never applied that to Dr. Drogizek, however, never. They found that his testimony about whether or not the claimant had reported the accident to him upon the initial visit was somewhat equivocal. The doctor was saying, well, he might have said something, but I'm not sure. In fact, he testified he did not. By reassessing the claimant's credibility, and they didn't believe that he told the doctor, it necessarily would have an impact on the doctor's testimony. But the doctor never testified that he said that. The doctor testified he didn't remember anything about a slip and fall. Right. He said, I might have, I don't know. But after the claimant's testimony was reassessed, they believe that he told the doctor that. That's not what they wrote in the decision. They didn't write that at all. Instead, they just said his testimony was credible, and they reassessed things like whether the electronic medical record was new or not new. That was nothing that was impacted by the inappropriately admitted evidence. They looked at absolutely everything. They replayed the game. They took away the previous three quarters. And instead of just going back one play, they went all the way to the beginning. Do you have any case law that says when they reassess the claimant's credibility, they're just supposed to say, okay, now we find him credible, but we don't consider anything else. The case is still over. Is that what you're suggesting? There's a, there's a rule 23 workers' comp decision. I can't cite that in my brief, obviously, but you decided one in 2007. I think it was 2017, where you said exactly that. Which is what? You said, so the court remanded finding that the claimant was improperly impeached, and you remanded to look to see whether the commission's credibility determination was an error. And you found that the commission went outside of the scope of the remand. You said all you asked for was them to look at the credibility decision, when in fact, what they did is they, they failed to comply with the order, and they went back and gave the claimant everything. I don't know if you have the remand order in front of you in that case, but I think it's a little less broad than what we have here. If you had remanded it completely, right, it wouldn't have said with directions, it wouldn't have had a specific mandate. But it did say both of those things. And the commission even pointed that out in their decision, that they knew that they had specific guardrails, they had knew they had specific limitations to their decision. And yet, they went back and reassessed absolutely everything. This is giving another bite at the apple, which, you know, procedurally, this is a mess, because this is not the same panel as heard the first case, right? And what you're asking them to do is put themselves in the shoes of the 2016 commission. Well, that happens all the time, doesn't it? Unfortunately, it's happening more often, right? But but it's not unique. That piece is not unique. But what is unique is that they went outside of where the guardrails you gave them. And you made it very clear, you have to determine whether or not they went outside the guardrails. Yes. And I will I will tell you, I think that the language you gave in the opinion does exactly that, because it specifically says that the credibility of Akron and Smith is was not in any way impacted. You specifically outlined I mean, there's a sentence, it's not relevant to assessing their testimony in any way. And yet they did go back and reweigh it. They essentially said Akron, we don't believe him, we believe the claimant. Well, they had already found that Akron was what testified truthfully and did not get any notice. And everyone admits that the claimant didn't give any written notice. So any other decision on the issue other than whether the claimant is credible, any other issues that addresses are outside the scope of your of their authority, and their order is therefore void for lack of jurisdiction. Are you taking the position, Miss Belton that you could not have directed the court to this rule 23, or persuasive authority, because the date of the rule 23 is prior to January for I can't write so I would have loved to because it's essentially my case. But when you ask me if there's any authority at all, I presume I can answer that question as honestly as I can. Because that case, this you've already decided this, this case before, whether I can cite it in a brief, if it was, you know, if we push the game clock ahead, that was three seasons beyond four seasons beyond, I could have used it. But I couldn't I can't put it in my brief today. Okay. Did you have any other questions about the the remand? Because if you don't, I can talk about the manifest weight real quickly. No, your argument. Okay. All right. So I wanted to make sure I, I gave you all the opportunities. So, okay. So to manifest weight, if you've somehow find that the order is not void, then no rational trier of fact could conclude by a preponderance of the credible evidence that the claim is sustained an accident in the course of in scope of his employment. And, and this is the really important one. And it's impossible to find that the shoulder condition is causally connected to the claim of a slip and fall injury. So, for the first piece, none of the contemporaneous medical records support the claimants claim of work accident. In fact, the first four medical records from his treating physician, who he had this longstanding history and relationship with, don't support that. Dr. Drzyzik tried to explain it away by saying these electronic medical records are new. But as I mentioned, he had already had these medical records in place for about a year. There's a, there's a record from April 23rd, 2012. Also on this point, the claimant did not really have any history to anybody. It didn't give a work-related history until the MRI was positive. The claimant also argues that leaving a voicemail for his superior on the day, the day after the claimed injury essentially proves that he has a work accident. But that statement is literally impossible for you to believe because he also said he gave his work restrictions at that time. He didn't have work restrictions at that time. It's impossible to believe that that occurred. You can't believe both. He also said that he had no prior complaints about his right shoulder, but the medical records show that that is not true either. And his physical exam showed adhesive capsulitis about a week after the fall. And that takes a long time to develop, especially to the part that is the most important, I think. Not even Dr. Drajic opined that this particular incident caused the condition that had surgery. He didn't say there was an aggravation. What he said is his regular job probably contributed to this. He didn't say the slip and fall caused this. He didn't say this, that the fall on the outstretch arm caused it. He said it was probably just his regular work. So the commission cannot find that the guy has an accident and that this is causally connected to it with that opinion. And Dr. Hennessy says no also. There's not a single medical doctor who says that these two things go together. In fact, every physician agrees that this was a degenerative condition and you don't find anywhere in the record them saying that the slip and fall incident, any of them, aggravated this condition. So to sum up, we should not be right here right now. This case should be at the commission with them reweighing the claimant's credibility and not everybody else's. Their 2020 order is void and the case should go back to them to reassess just the claimant's credibility and how much that little piece we put on the scale weighs. Everybody else's testimony was already there. Everyone else's testimony was already in place. Everyone else's testimony had already been weighed. And as you said, the bad act or the inadmissible evidence in no way changed their opinions or the credibility of their opinions. So the only weight they can look at is the claimants. Thank you. Thank you, Ms. Bilton. Any questions? No. Mr. Vogler, you may respond. Oh, turn on your speaker. Oh, there we go. Good morning, justices and counsel. May it please the court. The respondent in this case invited error to the arbitrator and the arbitrator declined to admit that evidence of bad acts. That was rejected and the arbitrator wrote a decision of finding compensability. They then invited the commission to introduce error into the decision and they did. And that's when this court remanded the case back. And now they're complaining that somehow due to their error and due to their injecting error into this case that somehow we can't sort this out. Well, it's pretty straightforward. And I think Justice Hoffman pointed out the plain reading of the court's order instructed the commission that their decision was vacated and that it was remanded so that they could reconsider its decision using appropriate evidence. And they did that. And the idea that somehow they went beyond the court's instruction that the commission shall reconsider all issues doesn't mean all issues. It just means that we're not using English anymore, that we're not looking at things in the plain meaning that they were given. Certainly this court, if this court only wanted the commission to address the credibility of the petitioner, they could have written an order to do that. But because the commission's decision was so intertwined with the credibility of the petitioner, this court instructed all issues to be reconsidered. And the court did so. And the court reinstated the arbitrator's findings. So there wasn't anything strange or different that the commission did. The commission adopted the findings of the arbitrator who had previously had the opportunity to view the credibility of their witnesses and take the testimony and observe the demeanor of the witnesses. And so the commission adopted his decision and findings. So there was nothing inappropriate about that. And there was nothing inappropriate about this court's order. And if the court wanted to do what respondents now asking them to do, they could have. They could have said on remand, the commission shall not reconsider all issues. On remand, the commission shall only address the credibility of petitioners. But the court didn't do that. And so now to criticize the order, I don't think that's appropriate. And I don't think it's appropriate to say, well, this introduction of character evidence of bad acts somehow tainted these hearings. Now, it was very easy to separate that. And the arbitrator was able to do so. And the commission was able to do so. And this court was able to do so. It seems that the respondent is the only one it confused as what's appropriate and what's not. With regard to, if anyone has any questions about that, that's fine. But with regard to the second issue, there certainly is support in the record for the arbitrator, as well as the commission's decision to say that now we don't believe the credibility of the petitioner. That's fine. But that's not what this court is supposed to do. And that's what they're asking to do is to substitute your determination of the credibility of the witnesses, your determination of the medical evidence to support the respondent's position and to reweigh that evidence. But that's not the role of the court. Just looking at, assume everything that the respondent says is true, that petitioner had a pre-existing condition in his shoulder, and that that pre-existing condition was the need for the surgery. Well, their own section 12 examiner said that the work activities that he did caused the need for the degenerative changes and caused the surgery. So even if you want to assume that everything they say is true, their own section 12 examiner still said that it was work-related. And that was pointed out not only by the commission, but also pointed out in this court's prior ruling with regard to Dr. If you don't have any other questions, I'll finish my remarks here. I don't believe there are. Very good. Thank you, Mr. Goldberg. Ms. Bilton, you may reply. Thank you. I just have a couple of things to say with regard to whether the commission was told to weigh all the evidence or all the issues. They were asked to weigh all the issues, not all the evidence. The decision specifically said the evidence should not be admitted if the purpose is solely to show that a party is a bad person. It was clear from your decision and your opinion that the encounter did not affect or impact anyone's credibility other than the petitioner claimants himself. And by trying to argue that the document in plain language with your order says that the commission is supposed to readdress all evidence when it says all issues, that is a legal distinction that needs to be highlighted. They were asked to address the credibility of the petitioner again, and then to reweigh the issues based on that. And that's where I say they went the wrong way. They addressed way too many things. They reweighed all evidence, not just all the issues. As to the manifest weight issue, how can any person find a causal connection in a case with the case law that we've got that says if somebody has a preexisting condition, you're going to need medical evidence to prove it. How can anyone argue that a specific trauma injury was proven here, that a causal connection was proven to a specific trauma injury when there was prior treatment, there were prior complaints, and there was no opinion that that slip and fall caused the trauma in the shoulder. Everyone agreed it was degenerative. There was nothing on there that was acute. And even the treating physician, even the primary care physician who knew this claimant well, never opined that this slip and fall caused the problems in the shoulder. So, if you don't have any other further questions for me, I can give you back your time. Questions from the court? No. Thank you, counsel, both for your arguments in this matter.